IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

TERRANCE TUCKER,              )
                             )
            Petitioner       )      Civil Action
                             )      No. 11-cv-00966
        v.                   )
                             )
MIKE WENEROWICZ, SUPERINTENDENT,  )
                             )
            Respondent       )


                    *    *    *

APPEARANCES:

    ARIANNA J. FREEMAN, ESQUIRE
        On Behalf of Petitioner

    MOLLY SELZER LORBER, ESQUIRE
        On Behalf of Respondent

                    *    *    *

                **O P I N I O N**

JAMES KNOLL GARDNER
United States District Judge




                [SPACE INTENTIONALLY LEFT BLANK]

## TABLE OF CONTENTS

Page

SUMMARY OF DECISION............................................. 3

FACTUAL & PROCEDURAL BACKGROUND................................. 6

    Conviction and Sentence.................................... 6

    Underlying Offense......................................... 7

    State-Court Appellate Proceedings.......................... 9

    Federal Proceeding........................................ 10

        Petition and Response................................. 10

        Report and Recommendation and Objections
        by Petitioner Pro Se................................. 11

        Counseled Objections................................. 13

STANDARD OF REVIEW............................................. 14

    "Contrary To"............................................. 15

    "Unreasonable Application"................................ 16

    Factual Determinations.................................... 19

DISCUSSION.................................................... 20

    Petitioner's Claims...................................... 20

    Ground One: Ineffective Assistance of
    Direct-Appeal Counsel.................................... 21

        State-Court Treatment of Trial Closure Question..... 21

        Subsequent History of Superior Court's Opinion
        in Constant......................................... 26

        Refusal to Apply Waller............................. 28

        Application of Waller............................... 29

        Unreasonableness of Strickland Application.......... 33

        Remedy.............................................. 39

    Ground Two: Ineffective Assistance of Trial Counsel...... 42

CONCLUSION.................................................... 42

## SUMMARY OF DECISION

Petitioner Terrance Tucker seeks federal habeas corpus relief from his Pennsylvania state-court conviction for Murder of the third degree, and related offenses, arising from the February 10, 2002 shooting death of Mikal Scott in Philadelphia, Pennsylvania.

For the reasons expressed below, I decline to adopt the magistrate judge's Report and Recommendation as it pertains to the first ground for relief asserted by petitioner.  Instead, I grant petitioner's request for habeas corpus relief on his first claim.  I do so because I agree with petitioner that his right to effective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution was violated by the failure of his direct-appeal counsel to raise the clearly meritorious claim that the trial court's closure of the courtroom to the public for the entirety of the trial violated petitioner's right to a public trial also guaranteed by the Sixth Amendment to the United States Constitution.

Specifically, petitioner is entitled to federal habeas corpus relief because the state courts' rejection of that ineffective-assistance claim is based on an objectively unreasonable application of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), vis-a'-vis

Waller v. Georgia, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984).  Put differently, the Pennsylvania state courts identified the appropriate legal principle governing petitioner's ineffective-assistance-of-appellate-counsel claim (the Strickland standard) but applied that principle in an objectively unreasonable manner based on the record in this case.

Here, the Pennsylvania courts disposed of petitioner's ineffective-assistance-of-appellate-counsel claim on prong one of the Strickland framework based on the state courts' conclusion that petitioner's underlying Sixth-Amendment public-trial claim was meritless and, thus, appellate counsel's failure to raise that claim on direct appeal could not be deemed deficient for Strickland purposes.

The Superior Court of Pennsylvania on collateral appeal under Pennsylvania's Post-Conviction Relief Act ("PCRA")[1] concluded that petitioner's underlying Sixth-Amendment public-trial claim was meritless.  That conclusion rested on the Superior Court's explicit refusal to apply then-existing, binding precedent from the United States Supreme Court governing Sixth-Amendment public-trial claims (that is, Waller).  Instead, the Superior Court applied its own precedent which imposed a less-demanding standard to justify courtroom closures than that

---

[1]          42 Pa.C.S.A. § 9501 to § 9561 ("PCRA").

-4-

mandated by the Sixth Amendment to the United States Constitution.

The state courtroom closure here began after the parties' opening statements and continued through the end of closing arguments.  That closure was a plain violation of Waller.  A Sixth-Amendment public-trial violation is a structural defect in the proceedings.  The remedy for such a violation is a new trial.

If appellate counsel had raised the properly-preserved and clearly-meritorious Sixth-Amendment public-trial claim on direct appeal and if the Superior Court of Pennsylvania had applied Waller to that claim, defendant would have been entitled to a new trial.  Because appellate counsel did not do so, petitioner was deprived of effective assistance of appellate counsel.

Petitioner was prejudiced by that deprivation because it deprived him of a new trial.  The Pennsylvania courts' denial of petitioner's ineffective-assistance-of-appellate-counsel claim was based on an unreasonable application of Strickland. Therefore, petitioner is entitled to habeas corpus relief.

Because the underlying violation was a violation of petitioner's Sixth-Amendment public-trial right, it represents structural error and, as such, entitles petitioner to a new trial.

## FACTUAL & PROCEDURAL BACKGROUND

### Conviction and Sentence

On November 9, 2003, after a three-day trial in the Court of Common Pleas of Philadelphia County, Pennsylvania, a jury found petitioner Terrance Tucker guilty of one count of Murder of the third degree[2], one count of Recklessly endangering another person[3], one count of Criminal conspiracy[4], and one count of Possessing instruments of crime.[5]

On January 13, 2004 petitioner was sentenced by the trial judge, Honorable Renée Cardwell Hughes, to a term of not less than twenty, nor more than forty, years imprisonment on the third-degree murder charge; and a term of not less than ten, nor more than twenty, years imprisonment on the conspiracy charge. Judge Hughes imposed those terms of imprisonment to run consecutively, resulting in a total term of not less than thirty, nor more than sixty, years imprisonment. Petitioner received no further penalty for the charges of Recklessly endangering another person and Possessing instruments of crime.[6]

---

[2]          18 Pa.C.S.A. § 2502(c).

[3]          18 Pa.C.S.A. § 2705.

[4]          18 Pa.C.S.A. § 903.

[5]          18 Pa.C.S.A. § 907.

[6]          Tucker II, Slip. Op. at page 3.

## Underlying Offense

As stated by trial court in its May 4, 2005 Opinion issued pursuant to Rule 1925 of the Pennsylvania Rules of Appellate Procedure, and quoted by the Superior Court of Pennsylvania in its Memorandum filed June 20, 2006 affirming petitioner's conviction and sentence on direct appeal, the facts underlying petitioner's conviction are as follows:

On March 30, 2000, there were two shootings in the areas of 25th and Norris Streets and 29th and Glenwood Streets in the City and County of Philadelphia. (N.T. 11/13/0[3], pgs. 41-42). Damon Walls, Edward Watts, Marcus 'Naime' Scott, and Rodney Abrams were charged with shooting at and injuring Terrance 'Boo-Boo' Tucker (appellant), Samuel Jones, Terrance Slappy, and Gary Corbett. (N.T. 11/13/0[3], pgs. 44-45). Appellant was arrested that evening for possession of a weapon and for firing back at Walls and Watts. (N.T. 11/13/0[3], p. 43). On March 31, 2000, Mikal Scott (decedent) was driving Isa Muhammed and Kaamil Jones when Damon Walls, Marcus Scott, and Edward Watts gunned down Isa Muhammed in the area of 26th and Master Streets in the City and County of Philadelphia. (N.T. 11/13/0[3], pgs. 53-76). Detective Marlena Mosely investigated the case and received information from Mikal Scott, an eyewitness to [the] shootings. *Id.* at p. 55. Subsequently, Walls and Watts are arrested for both cases. (N.T. 11/13/0[3], pgs. 45-46). Although Mikal Scott testified at the preliminary hearing and the trial of Walls and Watts, he denied the statement given to Detective Mosely. (N.T. 11/13/03, p. 60-62). Despite Mr. Scott's recantation both Walls and Watts were convicted of the murder of Isa Muhammed. (CP# 0007-1201).

In the early morning hours of February 10, 2002, Mikal Scott went to Anne 'Mookie' Williams' house located at 24th and Stewart Streets, in the City and County of Philadelphia, Pennsylvania. (N.T. 11/12/03, pgs. 109 and 113). Shortly thereafter,

appellant, and three other men showed up at Anne
Williams' house. (N.T. 11/12/03, p. 114). Mikal
Scott went upstairs while the appellant used a cell
phone. (N.T. 11/12/03, pgs. 116, 117, and 140). The
appellant then stated that he needed to use the
bathroom and went upstairs. (N.T. 11/12/03, pgs. 118,
119, 139). Mikal returned downstairs and the appell-
ant followed as Mikal stated that he wanted to go
home. (N.T. 11/12/03, pgs. 119 and 120). By that
time, the men that appellant came to the house with
had already left. (N.T. 11/12/03, p. 121). Mikal
asked Naima Scott, his sister, to take him home, she
said no, but Anne Williams agreed to take him. Tonay-
sha Austin asked if she could ride along to get some-
thing to eat. (N.T. 11/12/03, p. 122). All three
left the house for the car where Mikal Scott sat in
the front seat and Tonaysha Austin sat in the rear
passenger's seat. (N.T. 11/12/03, p. 123). Anne
Williams was about to get into the car but was called
back to the house. *Id.* As she was about to return to
the car, she immediately stopped and began to retreat
to her house as she saw the appellant and another make
approaching the car with guns. (N.T. 11/12/03,
p. 124). Appellant was wearing a Woolridge jacket
[Footnote 1] and the other male wore [a] ski jacket
and a tight fitting hat. (N.T. 11/12/03, pgs. 137 and
160). Both men stood at the passenger side of the car
and started shooting. *Id.* Mikal was seriously
wounded and wanted to be taken to the hospital. (N.T.
11/12/03, p. 125). There were no keys in the car and
Tonaysha Austin did not know how to drive. *Id.* Once
she felt that it was safe to leave the car, she ran to
a pay phone on 24th and Jefferson Streets. Anne
Williams' daughter spotted Tonaysha running and
followed her to the pay phone. (N.T. 11/12/03,
p. 126). Ms. Williams' daughter spoke to the police
because Tonaysha Austin was too upset. *Id.* Simulta-
neously, Tonaysha Austin observed Anne Williams and
Keisha Cotton drive off with Mikal Scott. (N.T.
11/12/03, pgs. 135, 165). They drove him to Hahnemann
Hospital. (N.T. 11/12/03, pgs. 139 and 166-169).
Mikal Scott was pronounced dead at 9:49 a.m. (N.T.
11/14/03, p. 13).

————————————

[Footnote 1] Commonwealth witnesses Tonaysha Austin
and Anne Williams described a Woolridge jacket as a

jacket that comes to a person's thighs with large
pockets and a hood with fur around it.  (N.T.
11/12/03, pgs. 137, 160).

Commonwealth of Pennsylvania v. Tucker, No. 618 Eastern District
Appeal 2004, Slip Op. at 1-3 (Pa.Super. June 20, 2006)(non-
precedential decision)("Tucker II")(quoting Commonwealth of
Pennsylvania v. Tucker, No. 1173, May Term 2002, Slip Op. at 8-
10 (Phila.C.P. May 4, 2005)("Tucker I"))(alterations provided by
Superior Court).

### State-Court Appellate Proceedings

Petitioner took a direct appeal to the Superior Court
of Pennsylvania from his conviction and sentence in the Court of
Common Pleas of Philadelphia County.  On direct appeal, the
Superior Court affirmed petitioner's conviction and sentence.
See Tucker II, Slip. Op. at 12.  The Supreme Court of
Pennsylvania denied allocatur on November 15, 2006.  See
Commonwealth of Pennsylvania v. Tucker, 590 Pa. 660,
911 A.2d 935 (2006)(Table).

Petitioner sought state-court collateral relief
pursuant to Pennsylvania's Post-Conviction Relief Act following
the completion of his direct appeal in the Pennsylvania courts.
The PCRA court appointed petitioner counsel and, ultimately,
dismissed the amended PCRA petition filed on petitioner's
behalf.  Commonwealth of Pennsylvania v. Tucker, No. CP-51-CR-

0511731-2002, Slip. Op. at 6 (Phila.C.P. Nov. 5, 2008)("Tucker III").

Petitioner took an appeal to the Superior Court of Pennsylvania from the PCRA court's dismissal of his amended petition for post-conviction relief.  The Superior Court affirmed the PCRA court's dismissal of petitioner's amended petition for post-conviction relief.  Commonwealth of Pennsylvania v. Tucker, No. 3224 EDA 2008, Slip. Op., at 14 (Pa.Super. Mar. 30, 2010)(non-precedential decision) ("Tucker IV").

Petitioner sought discretionary review in the Supreme Court of Pennsylvania of the PCRA appeal court's denial of his petition for post-conviction relief.  The Supreme Court of Pennsylvania denied petitioner's allocatur request.  Common-wealth of Pennsylvania v. Tucker, 608 Pa. 622, 8 A.3d 345 (Sept. 24, 2010)(Table).

## Federal Proceeding

### Petition and Response

On February 9, 2011, following completion of his Pennsylvania state-court collateral appeal proceedings, petitioner Terrance Tucker pro se timely filed his Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in

State Custody ("Petition"), which initiated this action.[7]  He filed a Petition for Appointment of Counsel on March 1, 2011.

On July 11, 2011, respondent Michael Wenerowicz, Superintendent of State Correctional Institution -- Graterford, filed his Response to Petition for Writ of Habeas Corpus ("Response").[8]  Petitioner filed a Traverse on July 26, 2011.[9]

**Report and Recommendation and Objections by Petitioner Pro Se**

On September 28, 2011, United States Magistrate Judge Timothy R. Rice issued a Report and Recommendation[10] which recommended that that the Petition be denied.  Petitioner pro se filed objections[11] to the Report and Recommendation on October 13, 2011.

---

[7]       The Petition was filed together with Exhibit A, "PCRA Court Opinion", a copy of Tucker III; Exhibit B, "Superior Court [PCRA] Opinion", a copy of Tucker IV; Exhibit C 1-4, "Letters from Trial/Appellate Counsel"; and a typewritten Petition for Writ of Habeas Corpus and Memorandum of Law in Support (together, Document 1).

[8]       The Response as filed together with Exhibit A, a copy of Tucker I; Exhibit B, a copy of Tucker II; and Exhibit C, a copy of Tucker IV (Documents 12-1 through 12-3, respectively).

[9]       Document 13.

        A "traverse" is a type of common-law pleading that is "[a] formal denial of a factual allegation made in the opposing party's pleading". Traverse, BLACK'S LAW DICTIONARY 1638 (9th ed. 2009).  The Traverse filed by petitioner pro se is in the nature of a reply brief in support of his Petition and in opposition to respondent's Response.

[10]      Document 14.

[11]      Document 16.

On May 9, 2012 petitioner pro se filed a motion[12] to amend his Petition to add an unexhausted claim of ineffective assistance of counsel relating to his trial counsel's performance or, in the alternative, to stay this proceeding while he exhausted that proposed claim in the Pennsylvania courts.  I denied the motion to amend or stay by, and for the reasons expressed in, my footnoted Order dated and filed March 29, 2013.[13]

On May 3, 2013 petitioner pro se filed a motion for reconsideration[14] of the denial of his prior motion to amend or stay.  Petitioner's motion for reconsideration was denied by, and for the reasons expressed in, my footnoted Order dated and filed March 31, 2014.[15]

On July 1, 2013, petitioner pro se filed a Supplemental Petition.[16]  The Supplemental Petition does not seek to assert an additional ground for relief.  Rather, it is in the nature of a brief concerning supplemental legal authority in further support of petitioner's claim of ineffective assistance on the part of his direct appeal counsel for failing to preserve

---

[12]          Document 18.

[13]          Document 19.

[14]          Document 20.

[15]          Document 22.

[16]          Document 21.

the federal constitutional claim that the trial court's closure of the courtroom for the remainder of trial immediately after opening statements violated petitioner's Sixth-Amendment public-trial right.

### Counseled Objections

By Order dated and filed March 31, 2014,[17] I appointed the Federal Community Defender Office for the Eastern District of Pennsylvania to represent petitioner and scheduled oral argument.

Petitioner's Counseled Objections to the Magistrate Judge's Report and Recommendation were filed on May 21, 2014 ("Counseled Objections").[18]  Respondent filed a Response to Petitioner's Counseled Objections to the Magistrate Judge's Report and Recommendation on June 2, 2014 ("Response to Counseled Objections").[19]

Oral argument was held before me on June 19, 2014.[20] At the close of the argument, I took the matter under advisement.

Hence this Opinion.

---

[17]        Document 23.

[18]        Document 29.

[19]        Document 31.

[20]        See Transcript of Oral Argument Before the Honorable James Knoll Gardner[,] United States District Judge held June 19, 2014 (Document 37) ("Oral Argument Transcript").

## <u>STANDARD OF REVIEW</u>

In describing the role of federal habeas corpus proceedings, the Supreme Court of the United States, in <u>Barefoot v. Estelle</u>, 463 U.S. 880, 887, 103 S. Ct. 3383, 3391-3392 77 L.Ed.2d 1090, 1100 (1983), noted:

> [I]t must be remembered that direct appeal is the primary avenue for review of a conviction or sentence. ...  The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited.  Federal courts are not forums in which to relitigate state trials.

In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214, April 24, 1996 ("AEDPA"), which further "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  <u>Bell v. Cone</u>, 535 U.S. 685, 693, 122 S. Ct. 1843, 1849, 152 L. Ed. 2d 914, 926 (2002).

As amended by the AEDPA, section 2254 of the federal habeas corpus statute provides the standard of review for federal court review of state court criminal determinations and provides, in relevant part, as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. § 2254(d).

"Clearly established Federal law" should be determined as of the date of the relevant state court decision and is limited to the record before the state court which adjudicated the claim on the merits. Greene v. Fisher, ___ U.S. ___, ___, 132 S.Ct. 38, 45, 181 L.Ed.2d 336, 341 (2011); Cullen v. Pinholster, 563 U.S. ___, ___, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557, 570 (2011).

### **"Contrary To"**

A state-court decision is "contrary to" clearly established federal law if the state court (1) contradicts the governing law set forth in Supreme Court cases or (2) confronts a set of facts which are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result. Williams v. Taylor, 529 U.S. 362, 405-406, 120 S.Ct. 1495, 1519-1520, 146 L.Ed.2d 389, 425-426 (2000); Jamison v. Klem, 544 F.3d 266, 274 (3d Cir. 2008).

The state court judgment must contradict clearly established decisions of the Supreme Court, not merely law articulated by any federal court, <u>Williams</u>, 529 U.S. at 405, 120 S.Ct. at 1519-1520, 146 L.Ed.2d at 425-426, although district and appellate federal court decisions evaluating Supreme Court precedent may amplify such precedent, <u>Hardcastle v. Horn</u>, 368 F.3d 246, 256 n. 3 (3d Cir. 2004)(citing <u>Matteo v. Superintendent, SCI Albion</u>, 171 F.3d 877, 890 (3d Cir. 1999)).

The state court is not required to cite or even have an awareness of governing Supreme Court precedent "so long as neither the reasoning nor the result of [its] decision contradicts them." <u>Early v. Packer</u>, 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d 263, 270 (2002); <u>Jamison v. Klem</u>, 544 F.3d 266, 274-275 (3d Cir. 2008).  Few state court decisions will be "contrary to" Supreme Court precedent.

### "Unreasonable Application"

Federal habeas courts more often must determine whether the state court adjudication was an "unreasonable application" of Supreme Court precedent.  A state-court decision "involves an unreasonable application" of clearly established federal law if the state court (1) identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular case; or (2) unreasonably extends a legal principle from Supreme Court

precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.  <u>Williams</u>, 529 U.S. at 407, 120 S.Ct. at 1520, 146 L.Ed.2d at 426-427.

A showing of clear error is not sufficient.  <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75-76, 123 S.Ct. 1166, 1174-1175 155 L.Ed.2d 144, 158 (2003).  Nor is habeas relief available merely because the state court applied federal law erroneously or incorrectly.  <u>Thomas v. Varner</u>, 428 F.3d 491, 497 (3d Cir. 2005); <u>Jacobs v. Horn</u>, 395 F.3d 92, 100 (3d Cir. 2005).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." <u>Harrington v. Richter</u>, 562 U.S. 86, 101, 131 S.Ct. 770, 786, 178 L.Ed.2d 624, 640 (2011)(quoting <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664, 124 S.Ct. 2140, 2149, 158 L.Ed.2d 938, 951 (2004)).

Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Id.</u>, 562 U.S. at 103, 131 S.Ct. at 786-787, 178 L.Ed.2d at 641.

The Supreme Court repeatedly has reiterated the deference that the federal courts must accord to state court decisions.  In <u>Lockyer</u>, 538 U.S. at 75, 123 S.Ct. at 1175, 155 L.Ed.2d at 168, the United States Supreme Court proclaimed that "[i]t is not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was erroneous."

In <u>Schriro v. Landrigan</u>, 550 U.S. 465, 473, 127 S.Ct. 1933, 1939, 167 L.Ed.2d 836, 844 (2007), the Supreme Court clarified that "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable -- a substantially higher threshold."

In <u>Harrington</u>, 562 U.S. at 102-103, 131 S.Ct. at 786, 178 L.Ed.2d at 641, the Supreme Court said, "We must use habeas corpus as a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."

Finally, in <u>Felkner v. Jackson</u>, 562 U.S. 594, ___, 131 S.Ct. 1305, 1307, 179 L.Ed.2d 374, 378 (2011), the Supreme Court stated that the "AEDPA imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt."

### Factual Determinations

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  The United States Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding."  Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S.Ct. 1029, 1041, 154 L.Ed.2d 931, 952 (2003)(dictum).

Moreover, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e).  Where a state court's factual findings are not made explicit, a federal court's "duty is to begin with the [state] court's legal conclusion and reason backward to the factual premises that, as a matter of reason and logic, must have undergirded it."  Campbell v. Vaughn, 209 F.3d 280, 289 (3d Cir. 2000).  In determining what implicit factual findings a state court made in reaching a conclusion, a federal court must infer that the state court applied federal law correctly.  Id.

-19-

(citing <u>Marshall v. Lonberger</u>, 459 U.S. 422, 433, 103 S.Ct. 843, 850, 74 L.Ed.2d 646, 658 (1982)).

<u>DISCUSSION</u>

**<u>Petitioner's Claims</u>**

Petitioner seeks federal habeas relief on two grounds, each sounding in a claim of ineffective assistance of counsel.

The first ground for relief asserted in the Petition is petitioner's claim that his direct-appeal counsel was ineffective for failing to argue to the Superior Court of Pennsylvania that the trial court erred and violated petitioner's right to a public trial under the Sixth Amendment to the United States Constitution by closing the courtroom for the entire duration of trial following the completion of opening statements but before any witnesses were presented or evidence received.

The second ground for relief asserted in the Petition is petitioner's claim that his trial counsel was ineffective for failing to seek a cautionary instruction to the jury concerning eyewitness testimony under <u>Commonwealth of Pennsylvania v. Kloiber</u>, 378 Pa. 412, 106 A.2d 802 (1954), <u>cert. denied</u>, 348 U.S. 875, 75 S.Ct. 112, 99 L.Ed.2d 688 (1954).[21]

---

[21]    At oral argument, counsel for petitioner, Assistant Federal Defender Arianna Freeman, argued petitioner's first claim only and rested on

(<u>Footnote 21 continued</u>):

-20-

## Ground One: Ineffective Assistance
## of Direct-Appeal Counsel

As described above, petitioner's first ground for federal habeas corpus relief is the claim that his direct-appeal counsel was ineffective for failing to argue to the Superior Court of Pennsylvania that the trial court erred and violated petitioner's right to a public trial under the Sixth Amendment to the United States Constitution by closing the courtroom for the entire duration of trial following the completion of opening statements but before an witnesses were presented or evidence received.

### State-Court Treatment of Trial Closure Question

The judge presiding at petitioner's state criminal trial, sua sponte and over the objection of petitioner's trial defense counsel, closed the courtroom to all members of the public, including members of petitioner's family.  The trial court made that determination after the completion of opening statements by both parties, but before the Commonwealth called its first witness or presented any evidence.  Neither party disputes that the closure lasted for the duration of the trial, including closing arguments.

---

(Continuation of footnote 21):

the written submissions with respect to petitioner's second claim. Respondents' counsel, Assistant District Attorney Molly Selzer Lorber, responded in kind, arguing in opposition to petitioner's first claim and resting on her written submissions concerning the second claim.

The objection of petitioner's trial defense counsel to the closure preserved for direct appeal the question of whether or not petitioner's right to a public trial under the Sixth Amendment to the United States Constitution was violated by the courtroom closure.

Despite defense counsel's recognition at trial of the need to object to the closure of the courtroom, defense counsel (who also represented petitioner on direct appeal) did not assert a claim on direct appeal that petitioner's Sixth-Amendment public-trial right was violated by the courtroom closure.  Thus, on direct appeal, the Superior Court of Pennsylvania did not have occasion to address the question of whether the trial court's closure of the courtroom comported with the Sixth Amendment and, more specifically, whether the closure comported with the United States Supreme Court's decision in Waller, supra.

As noted in the "State-Court Appellate Proceedings" subsection above, the Superior Court of Pennsylvania affirmed petitioner's conviction and sentence on direct appeal, and Mr. Tucker's petition for allocatur was denied by the Supreme Court of Pennsylvania.  Thereafter, petitioner sought state-court collateral relief under Pennsylvania's Post Conviction Relief Act.  42 Pa.C.S.A. § 9501 to § 9561.

In his state-court collateral proceeding, petitioner claimed that his appellate counsel rendered constitutionally-defective assistance of counsel.  Specifically, petitioner argued that his counsel was ineffective in not asserting a claim on direct appeal to the Pennsylvania Superior Court that, by closing the courtroom to the public for the duration of his trial, the trial court violated petitioner's federal Sixth-Amendment public-trial right.

The PCRA court (which also presided at, and initiated the contested closure of the courtroom for, trial) rejected petitioner's claim of ineffective assistance by his direct-appeal counsel.  Tucker III, Slip Op. at 2-4, and 6.

Specifically, the PCRA court dismissed the ineffec-tive-assistance claim because it reasoned that the closure was justified for the reasons the trial judge expressed on the record at trial and because on direct appeal the Superior Court of Pennsylvania would have applied an abuse-of-discretion standard of review to the trial court's closure decision.  Id. at 3-4.

More specifically, the PCRA court reasoned that, because the trial court offered a reasonable explanation for the closure decision (and, accordingly, did not abuse its discre-tion), the argument that the closure violated petitioner's Sixth-Amendment public-trial right was meritless and, therefore,

-23-

direct-appeal counsel was not ineffective for not asserting a Sixth-Amendment public-trial violation.  <u>Tucker III</u>, Slip Op. at 3-4.

The PCRA appeal court affirmed the PCRA court's decision to deny petitioner's ineffective assistance claim concerning his direct-appeal counsel.  <u>Tucker IV</u>, Slip Op. at 5-8, and 14.

In reaching that decision, the PCRA appeal court acknowledged that "[a]n accused is guaranteed a right to a public trial in both the United States Constitution and the Pennsylvania Constitution", <u>id.</u>, at 6, and that the right of an accused to a public trial serves to ensure that he is not subject to a "Star Chamber" proceeding and to assure the public that the standards of fairness are being observed in the courts. <u>Id.</u>

However, the PCRA appeal court further stated that the right to a public trial is "not unfettered", and

> [w]here trial courts perceive a threat to the orderly administration of justice in their courtrooms by an unmanageable public, they may always place *reasonable restrictions on access* to the courtroom, so long as the basic guarantees of fairness are preserved such as by the presence of the press and the making of a record for later review.

<u>Id.</u> at pages 6-7 (quoting <u>Commonwealth of Pennsylvania v. Constant</u>, 925 A.2d 810, 817 (Pa.Super. 2007))(emphasis added).

Quoting the PCRA court's explanation of its reasons for closing the courtroom following opening statements and for the balance of the trial, the PCRA appeal court concluded:

> The trial court did not abuse its discretion in closing the courtroom to the public.  The trial court was acutely -- and justifiably -- concerned about the disruption caused by the spectators in the courtroom, particularly since this case had its genesis in a gang-related dispute.  Furthermore, by no means did the trial resemble a proceeding in the Star Chamber and we have a record of the proceeding to review on appeal.

Tucker IV, Slip Op. at 7.

As had the PCRA court below, see Tucker III, Slip Op. at 3-4, the PCRA appeal court determined that petitioner's direct-appeal counsel was not ineffective for failing to contest the trial closure on direct appeal because a such a challenge would have been meritless.  Tucker IV, Slip Op. at 8.

In reaching its conclusion that the trial court did not abuse its discretion by closing the trial, the PRCA appeal court further noted that

> [Mr.] Tucker makes much of the fact that his family was not allowed to attend the trial and cites federal decisions regarding the attendance of family members at court proceedings.  [Mr.] Tucker, however, provides no citation to precedential Pennsylvania state court decisions to support his argument concerning the attendance of family members.  Just as in Constant, *we decline to apply the federal decisions here*.  See 925 A.2d at 817 n.3.

Id. at 8 n.3 (emphasis added).

As explained below, the decision of the United States Supreme Court in <u>Waller</u> was among the federal decisions which the Superior Court of Pennsylvania expressly declined to apply.

**Subsequent History of Superior Court's Opinion in <u>Constant</u>**

It bears mention that in the <u>Constant</u> case (the prior Superior Court decision upon which the PCRA appeal court heavily relied here), the Superior Court of Pennsylvania stated that "[Mr.] Constant directs this Court's attention to several federal court decisions regarding the attendance of family members at court proceedings" but that he "cites no Pennsylvania state court decisions supporting his contention." <u>Commonwealth of Pennsylvania v. Constant</u>, 925 A.2d 810, 817 n.3 (Pa.Super. 2007)("<u>Constant I</u>").  The United States District Court for the Western District of Pennsylvania later granted federal habeas corpus relief to Mr. Constant on Sixth-Amendment public-trial grounds.  <u>Constant v. Pennsylvania Department of Corrections</u>, 912 F.Supp.2d 279, 294-309 (W.D.Pa.2012)("<u>Constant II</u>")(no appeal taken from district court's grant of habeas corpus relief). [22]

The Superior Court of Pennsylvania in <u>Constant I</u> declined to apply the federal court decisions cited by Mr.

---

[22]          <u>Constant I</u> was overruled on other grounds by <u>Commonwealth v. Minnis</u>, 83 A.3d 1047, 1053 (Pa.Super. 2014).

Constant, citing an earlier Opinion of the Superior Court for the proposition that "*in the absence of a ruling on a particular question by the United States Supreme Court*, the decision of a federal intermediate appellate panel or a federal district court is not binding on Pennsylvania courts." Constant I, 925 A.2d at 817 n.3 (citing Commonwealth of Pennsylvania v. Giffin, 407 Pa.Super. 15, 595 A.2d 101, 107 (1991))(emphasis added).

Be that as it may, petitioner in this matter briefed the Opinions of the United States Supreme Court in Waller, supra, and In re Oliver, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948), in his PCRA appeal to the Superior Court of Pennsylvania.[23]  As was the situation in the Constant case, see Constant II, 912 F.Supp.2d at 299, the Superior Court of Pennsylvania in petitioner's PCRA appeal expressly declined to apply the United States Supreme Court decision in Waller to assess whether the trial court's closure decision violated petitioner's right to a public trial guaranteed by the Sixth Amendment to the United States Constitution.

---

[23]         Brief for Appellant dated May 2009 in Commonwealth of Pennsylvania v. Terrance Tucker, No. 3224 EDA 2008 in the Superior Court of Pennsylvania, Philadelphia District, at pages 16-18 (citing Waller); see also Letter Brief: PCRA Appeal dated September 9, 2009 in Commonwealth of Pennsylvania v. Terrance Tucker, No. 3224 EDA 2008 in the Superior Court of Pennsylvania, Philadelphia District, at page 13 (same).

**Refusal to Apply <u>Waller</u>**

In <u>Drummond v. Houk</u>, 761 F.Supp.2d 638 (N.D.Ohio 2010), <u>aff'd</u> 728 F.3d 520 (6th Cir. 2013), the district court conditionally granted a writ of habeas corpus to a state prisoner on Sixth-Amendment public-trial grounds.  The district court noted that the applicable legal standard provided by the AEDPA, 28 U.S.C. § 2254(d), "establishes a multifaceted analysis involving both the state court's statement and/or application of federal law and its findings of fact."  <u>Drummond</u>, 761 F.Supp.2d at 661.

Here, however, the Pennsylvania state courts (on both direct and collateral review) neither applied nor purported to apply the federal public-trial provision of the Sixth Amendment to the United States Constitution (as interpreted by the United States Supreme Court in <u>Waller</u>, <u>supra</u>) in assessing either the decision of the trial court to exclude the public entirely from petitioner's trial, or the failure of petitioner's direct-appeal counsel to raise a Sixth-Amendment public-trial claim on direct appeal.[24]

Rather, as in the <u>Constant</u> case, the Superior Court of Pennsylvania (here as the PCRA appeal court) expressly declined

---

[24] Because direct-appeal counsel failed to raise the public-trial claim, counsel failed to preserve that claim for federal habeas review. Thus, petitioner was required to raise the public-trial issue through an ineffective-assistance claim.

to apply Waller in evaluating petitioner's ineffectiveness claim concerning his direct-appeal counsel.

As the following discussion demonstrates, application of Waller to the record in this case plainly evidences a violation of petitioner's right to a public trial under the Sixth Amendment to the United States Constitution.  Moreover, as discussed further below, the fact that the Sixth-Amendment public-trial violation under Waller here is plain belies respondent's contention that the Pennsylvania courts applied Strickland to the ineffective-assistance-of-appellate-counsel claim in an objectively reasonable manner.

### Application of Waller

The United States Supreme Court in Waller held that the Sixth-Amendment public-trial right applies to suppression hearings in criminal cases and that the closure of an entire suppression hearing below violated that right.  The Supreme Court further held that

> [1] the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, [2] the closure must be no broader than necessary to protect that interest, [3] the trial court must consider reasonable alternatives to closing the proceeding, and [4] [the trial court] must make findings adequate to support the closure.

Waller, 467 U.S. at 48, 104 S.Ct. at 2216, 81 L.Ed.2d at 39.

In the case before this court, the state trial court raised the trial-closure issue sua sponte following completion

-29-

of opening statements by Commonwealth counsel and petitioner's trial defense counsel.  The justification provided by the trial court for the closure was its concern about potential witness intimidation (with respect to Commonwealth witness, Tonaysha Austin) and to ensure the safety of witnesses because petitioner's case involved a gang dispute, with complex and unclear relationships between individuals from the same Philadelphia neighborhood, and a history of witness intimidation related to petitioner's case.[25]

According to Commonwealth trial counsel, no direct threat was conveyed to, or against, Ms. Austin.  However, according to Commonwealth counsel, a relative of Ms. Austin approached her after the relative was released from prison (several weeks prior to petitioner's trial) with a message (purportedly from petitioner) for Ms. Austin that if she testified in court she should not say that petitioner was the one who did it because petitioner was not the one who did it.[26]

Even if protecting Ms. Austin's testimony and safety (in light of an arguably-implicit threat against her) was an overriding interest sufficient to support a courtroom closure at trial, Waller nonetheless mandates that "the closure must be no

---

[25]        Notes of Testimony of Trial, November 12, 2003, Day 1 ("N.T. Trial Day 1"), at pages 90-95; 34-40 (discussion between both counsel and the trial court regarding safety concerns about and apprehension of Commonwealth witness Tonaysha Austin).

[26]        N.T. Trial Day 1, at page 36.

broader than necessary to protect that interest, the trial court
must consider reasonable alternatives to closing the proceeding,
and it must make findings adequate to support the closure."
Waller, 467 U.S. at 48, 104 S.Ct. at 2216, 81 L.Ed.2d at 39.

Here, in deciding to exclude the public from the
courtroom for duration of trial, the trial court did discuss the
concerns relating to one Commonwealth witness (Ms. Austin), but
did not discuss threats (explicit or implied) concerning any
other particular witnesses, nor did it make any specific
findings on the record concerning threats against any other
witnesses.   Ms. Austin testified on the afternoon of the first
day, and her testimony concluded on the morning of the second
day, of petitioner's trial.  As an eyewitness to the shooting
for which petitioner was convicted, she was a significant
witness.

However, she was the first of thirteen witnesses to
testify at trial.  During the second and third days of trial,
the Commonwealth's remaining witnesses included two civilians,
one medical examiner, and six law enforcement officers.  The
remaining four witnesses were civilians called by petitioner.
The record is silent with respect to any threats, express or
implied, concerning any of those twelve remaining witnesses.

Rather, the trial court stated that it had "previously
documented in this record that there *may have been attempts* at

-31-

witness tampering" (again, no witness other than Ms. Austin was alleged to have been tampered with) and concluded, after explaining the relationship of petitioner's trial to the events underlying a previous trial, by stating that "[i]n an abundance of caution to keep the testimony of any witnesses, be they Commonwealth, or should the defense choose to call witnesses, as pristine as possible that we're better served closing the courtroom so that the jury has a clean record to work with."[27]

While the trial court's concerns with respect to Ms. Austin are understandable, application of Waller -- then-existing and binding precedent from the United States Supreme Court concerning criminal trial closures under the Sixth Amendment -- to the trial court's closure determination clearly demonstrates that, even assuming that the trial court's findings were sufficient to justify closure of the courtroom during Ms. Austin's testimony, the closure of the entire trial to the public after opening statements (including testimony of a half-dozen law enforcement witnesses, none of whom were undercover) was broader than necessary to protect the sole potentially-overriding interest advanced by the trial judge who initiated the closure.

Moreover, the record does not indicate that the trial judge (who sua sponte raised the prospect of a courtroom

---

[27]        N.T. Trial Day 1, at pages 93-94 (emphasis added).

closure) considered any reasonable alternatives to its decision to exclude the public from the balance of the trial after opening statements.

For those reasons, the court's closure of petitioner's trial to the public during the presentation of all testimony and evidence, and the parties' closing arguments was plainly violative of petitioner's federal Sixth-Amendment public-trial right under Waller.

### Unreasonableness of Strickland Application

As described above, and as reflected by counsel for the parties at oral argument,[28] petitioner's claim asserted as ground one for relief in his Petition is not a direct claim that his Sixth-Amendment public-trial right was violated by the courtroom closure here.  Rather, petitioner's claim asserted as ground one is the derivative claim that his Sixth-Amendment right to effective assistance of counsel on direct appeal was violated by appellate counsel's failure to raise (and thus preserve for subsequent review) the direct Sixth-Amendment public-trial claim before the Superior Court.

Accordingly, it is necessary to determine the appropriate application of Waller in this case to arrive at an answer to the ultimate question.  However, the ultimate question

---

[28]        See Oral Argument Transcript at pages 22-23 (petitioner's counsel), and 24 (respondents' counsel).

which determines whether petitioner is entitled to federal
habeas corpus relief, in light of the deference owed under AEDPA
to state-court merits determinations, is:  Was it objectively
unreasonable under Strickland for the PCRA appeal court to
conclude that appellate counsel was not constitutionally
deficient for failure to present a federal Sixth-Amendment
public-trial claim on direct appeal?  For the reasons expressed
below, the answer is yes.

A claim of ineffective assistance of counsel involves
two elements which must be established by petitioner: (1) coun-
sel's performance must have been deficient, meaning that counsel
made errors so serious that he was not functioning as "the
counsel" guaranteed by the Sixth Amendment; and (2) the
deficient performance prejudiced the defense.  Strickland v.
Washington, 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d
at 693.

Where, as here, petitioner asserts a claim of
ineffective assistance of appellate counsel,[29] he must "show that

---

[29]      To establish a deficiency in counsel's performance at any
critical stage of a criminal prosecution, petitioner must demonstrate that
the representation fell below an "objective standard of reasonableness" based
on the particular facts of the case and viewed at the time of counsel's
conduct.  Strickland, 466 U.S. at 688, 104 S.Ct. at 2064-2065, 80 L.Ed.2d at
693-694; Senk v. Zimmerman, 886 F.2d 611, 615 (3d Cir. 1989).

Stated differently, Strickland requires that counsel perform in a
manner that is objectively reasonable, on the facts of the particular case,

(Footnote 29 continued):

-34-

his appellate counsel's failure to raise the [public-trial] argument on appeal fell outside the wide range of reasonable professional assistance; that is, [he would have to] overcome the presumption that, under the circumstances, the challenged action 'might be considered sound [appellate] strategy." Buehl v. Vaughn, 166 F.3d 163, 173 (3d Cir. 1999)(quoting Strickland, 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694-695) (internal quotations omitted and first alteration added).

The United States Court of Appeals for the Third Circuit has explained that "in a criminal defense, certain litigation decisions are considered 'fundamental' and are for the client to make.  These include decisions on whether to plead guilty, whether to testify, and whether to take an appeal. After consultation with the client, all other decisions fall within the professional responsibility of counsel." Sistrunk v. Vaughn, 96 F.3d 666, 670 (3d Cir. 1996)(citing Jones v. Barnes, 463 U.S. 745, 751, 103 S.Ct. 3308, 3312, 77 L.Ed.2d 987, 993 (1983)).

Moreover, the Third Circuit stated, "it is a well established principle that counsel decides which issues to

---

(Continuation of footnote 29):

viewed as at the time of counsel's challenged conduct.  Fahy v. Horn, 2014 U.S.Dist. LEXIS 118658, at *40 (E.D.Pa. Aug. 26, 2014)(Shapiro, S.J.) (citing Strickland, 466 U.S. at 668-689, 104 S.Ct. at 2052-2065, 80 L.Ed.2d at 674-695).

pursue on appeal,...and there is no duty to raise every possible claim.  An exercise of professional judgment is required." Sistrunk, 96 F.3d at 670 (citing Jones, 463 U.S. at 751-752, 103 S.Ct. at 3312-3313, 77 L.Ed.2d at 993-994)(internal citation omitted).

The circuit court in Sistrunk went on to explain that "[a]ppealing losing issues 'runs the risk of burying good arguments...in a verbal mound made up of strong and weak contentions[,]" id. (quoting Jones, 463 U.S. at 753, 103 S.Ct. at 3313, 77 L.Ed.2d at 994), and "[i]ndeed, the 'process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy.'"  Id. at 670 (quoting Smith v. Murray, 477 U.S. 527, 536, 106 S.Ct. 2661, 2667, 91 L.Ed.2d 434, 445 (1986)).

Here, while it can readily be presumed that the decision of appellate counsel not to press a public-trial claim before the Superior Court on direct appeal was strategic, it cannot be said -- in light of then-existing, governing precedent from the United States Supreme Court for such claims (that is, Waller) -- that such a strategy was sound, or an objectively reasonable exercise of professional judgment.

Put differently, the reasoning underlying appellate counsel's omission of the public-trial claim on direct appeal is

-36-

readily apparent -- counsel could reasonably anticipate (as
would later come to pass on PCRA appeal) that the Superior Court
of Pennsylvania would follow its own prior decisions concerning
public-trial claims by criminal defendants and reject petition-
er's public-trial claim as meritless pursuant to those deci-
sions.

     Indeed, appellate counsel could not have been faulted
for electing on strategic grounds not to feature the public-
trial claim prominently in petitioner's direct-appeal brief
despite the obvious[30] and clearly meritorious[31] nature of his
public-trial claim given the Superior Court of Pennsylvania's
previous treatment of such public-trial claims.  See Constant I,
supra.

     I am cognizant of both the deference owed under AEDPA
to the state courts' adjudication of petitioner's ineffective-
assistance claim against appellate counsel, and the need to
avoid hindsight bias by considering counsel's contested omission
as of the time it occurred.  Nevertheless, I conclude that
appellate counsel's failure to preserve petitioner's plainly-
meritorious claim under Waller (which would have entitled him to
a new trial) cannot reasonable be viewed as sound appellate

---

[30]     The claim was properly preserved by an objection from trial
counsel, and the closure spanned the entirety of petitioner's trial with the
exception of opening statements.

[31]     See the "Application of Waller" subsection above.

strategy or an objectively reasonable exercise of professional discretion.  Rather, that omission constituted constitutionally-deficient representation under Strickland.

Although the United State Supreme Court has noted that it is "difficult" to prevail on an ineffective-assistance claim based on appellate counsel's failure to raise a particular claim, the Court also noted that the presumption of sound strategy is overcome where the ignored and omitted issue is, or issues are, "clearly stronger" than those presented on appeal. Smith v. Robbins, 528 U.S. 259, 288, 120 S.Ct. 746, 765, 145 L.Ed.2d 756, 782 (2000).

There is simply no issue stronger than one -- like the omitted Sixth-Amendment public-trial issue here -- which is clearly meritorious and which, when analyzed under the governing precedent from the United States Supreme Court, entitles a convicted criminal defendant to a new trial.

The strength of the underlying Sixth-Amendment public-trial claim and the structural nature of such a violation combine to demonstrate the necessary prejudice to satisfy prong two of the Strickland framework.

To establish the second Strickland prong, "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." _Strickland_, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.

Here, but for appellate counsel's failure to raise (and thereby preserve) petitioner's public-trial claim on direct appeal, petitioner would have been entitled to a new trial when that direct Sixth-Amendment public-trial claim was addressed under the then-existing, governing precedent from the United States Supreme Court.  Accordingly, dismissal of petitioner's ineffective-assistance claim concerning his direct appeal counsel was not an objectively reasonable application of _Strickland_.

### Remedy

Petitioner seeks federal habeas corpus relief in the form of either his release from custody, or a new trial.[32]

Concerning the scope of remedies in habeas corpus the United States Court of Appeals for the Third Circuit has stated that

> [b]oth the historic nature of the writ and principles of federalism preclude a federal court's direct interference with a state court's conduct of state litigation....  A habeas court does not have power to directly intervene in the process of the tribunal which has incorrectly subjected the petitioner to the custody of the respondent official.

---

[32]      Petition at page 18.

McKeever v. Warden, SCI-Graterford, 486 F.3d 81, 85 (3d Cir. 2007)(quoting Barry v. Brower, 864 F.2d 294, 300-301 (3d Cir. 1988)).

Furthermore, the Third Circuit has explained that "[a] state should be given the opportunity to correct its own errors and federal remedies should be designed to enable state courts to fulfill their constitutional obligations to the defendant." Id. (quoting Dickerson v. Vaughn, 90 F.3d 87, 92 (3d Cir. 1996)).

In Barry, the Third Circuit held that the petitioner was entitled to federal habeas corpus relief based on ineffective-assistance of appellate counsel and concluded that the appropriate remedy was to order that the state either release the petitioner or reinstate his appeal and appoint counsel. There, however, the violation of the petitioner's right to appellate counsel deprived him of an opportunity to prosecute any claims on direct appeal in state court.  Barry, 864 F.2d at 300-301.

Here, by contrast, petitioner was represented by counsel on direct appeal but that counsel's constitutionally-deficient performance caused an underlying structural error at trial to go unremedied on direct appeal and unpreserved for further review on the merits.

-40-

As explained above, application of the then-existing, controlling precedent from the United States Supreme Court demonstrates that the trial court's closure decision violated petitioner's right to a public trial under the Sixth Amendment of the United States Constitution.  The remedy for such a violation is a new trial.  See Waller, 467 U.S. at 49-50, 104 S.Ct. at 2217, 81 L.Ed.2d at 40-41.  Thus, by declining to raise a Sixth-Amendment public-trial claim on direct appeal (despite having objected to the closure at trial), petitioner's counsel on direct appeal failed to raise (and preserve for federal habeas review) a meritorious claim which (because it demonstrated a structural error) would have entitled petitioner to a new trial.

As described above, the violation of petitioner's right to a public trial under the Sixth Amendment to the United States Constitution is a necessary predicate to the violation of his Sixth Amendment right to effective assistance of appellate counsel.  Accordingly, the appropriate remedy is an Order granting a conditional[33] writ of habeas corpus requiring the

---

[33]     As noted above, petitioner seeks relief in the form a writ requiring the Commonwealth to either release or re-try him.  At oral argument, while steadfastly maintaining the position that petitioner is not entitled to habeas corpus relief on his claim of ineffective assistance by appellate counsel, respondent stated that the appropriate relief (if the court were to find relief warranted) would be an Order granting a conditional writ of habeas corpus requiring the Commonwealth to release petitioner or re-try him within a reasonable period of time.  (Oral Argument Transcript at page 51.)  Petitioner concurred with respondent's articulation of the appropriate remedy in the event relief is deemed appropriate.  (Id. at page 53.)

Commonwealth of Pennsylvania to either release petitioner or grant him a new trial.

### Ground Two: Ineffective Assistance of Trial Counsel

Because, for the reasons expressed above, I conclude that petitioner is entitled to habeas corpus relief on the first ground asserted in his Petition and the remedy required is a new trial, I need not reach the second ground advanced in his Petition (that his trial counsel was ineffective for failing to seek a cautionary instruction to the jury concerning eyewitness testimony under Commonwealth of Pennsylvania v. Kloiber, 378 Pa. 412, 106 A.2d 802 (1954), cert. denied, 348 U.S. 875, 75 S.Ct. 112, 99 L.Ed.2d 688 (1954)).

### CONCLUSION

For the reasons discussed above, petitioner is entitled to federal habeas corpus relief from his Pennsylvania state court conviction requiring the Commonwealth of Pennsylvania to either release him from custody or grant him a new trial.